IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT LESLIE CALDWELL, | § | |
| TDCJ #1453470, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-0721 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Robert Leslie Caldwell (TDCJ #1453470, former TDCJ #1151575, #587582) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. The respondent has answered with a motion for summary judgment, arguing that Caldwell is not entitled to the relief he seeks [Doc. # 12]. Caldwell has filed a reply [Doc. # 13]. After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I. BACKGROUND

The record shows that a local grand jury returned an indictment against Caldwell in cause number 45812A, charging him with robbery. In particular, the indictment alleged that Caldwell intentionally causing bodily injury by striking a store employee with his hand

during the course of committing a theft of property.[1]  The state enhanced that indictment for purposes of punishment with allegations that Caldwell had at least one prior felony conviction for possession of a controlled substance.

At trial, the state presented substantial evidence of Caldwell's guilt.  Bonita Shumake testified that she was working as an overnight stocker at a local Wal-Mart store on November 18, 2006, when she heard the emergency exit alarm sound.  Shumake then observed Caldwell leaving the store with two flat-screen televisions still in their boxes. Shumake testified that, when she confronted Caldwell, he responded by striking her in the face and neck with his fist.  After his altercation with Shumake, Caldwell carried the televisions to a black SUV that was waiting at the loading dock and departed from the premises.  The SUV had no license plates.

A store manager (Richard Fontenot) testified that the theft was recorded on surveillance cameras, but acknowledged that the coverage did not include the entire building. It included some, but not all, of the altercation between Caldwell and Shumake.  It did not show Caldwell striking Shumake with his fist.  A Wal-Mart maintenance worker (Phil Collins) testified, however, that he was on duty when the theft occurred and that he saw the confrontation between Shumake and Caldwell.  Collins testified that, during his altercation with Shumake, Caldwell set the televisions down and struck Shumake in the face and head

---

[1]        In Texas, a person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE § 31.03(a).  A person commits the offense of robbery if, in the course of committing theft and, with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  TEX. PENAL CODE § 29.02.

with a "closed hand."  After Caldwell left with the televisions in a black SUV, Collins and other store employees called for police.

Officer Keith Griffith testified that, when he arrived at the store to investigate, he observed that Shumake was crying and "shaken" by her encounter with the thief.  Officer Griffith testified that Shumake had red marks on her neck as well as redness and swelling on the right side of her face.  An officer took photographs to document Shumake's injuries.

Officer Hugo Diaz testified that, after hearing a radio dispatch regarding the robbery, he located a black Lincoln Navigator SUV with no license plates as he drove north on Highway 6 near the Wal-Mart.  Officer Diaz attempted to conduct a traffic stop, but the SUV refused to pull over.  With the assistance of other officers, the SUV eventually stopped. Officer Diaz testified that Caldwell exited the passenger side of the SUV and remarked, "yeah, I did it."  Two flat-screen televisions were recovered from the black SUV in which Caldwell had been a passenger.

Caldwell testified in his own defense during the guilt-innocence phase of the trial. Caldwell admitted committing the offense of theft by stealing two flat-screen televisions from the Wal-Mart.  However, Caldwell denied striking Shumake or causing any physical harm during the course of the offense.  Defense counsel argued that the state failed to prove that a robbery occurred and that Caldwell was guilty, at most, of the lesser offense of theft.

After hearing all of the evidence, a jury in the 268th District Court of Fort Bend County, Texas, found Caldwell guilty as charged of robbery as alleged in the indictment. During the punishment phase of the trial, Caldwell conceded that the enhancement allegation

in the indictment was true.  The state also introduced evidence showing that Caldwell had several prior convictions, including at least two felonies.  After finding that the enhancement allegation was true,[2] the trial court sentenced Caldwell to serve 17 years' imprisonment.

On direct appeal, Caldwell's appointed attorney filed a brief along with a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967) (an "*Anders* brief"), certifying that the record disclosed no reversible error and that the appeal was without merit. In response to his counsel's motion, Caldwell raised the following issues in a *pro se* brief: (1) the trial court erred by permitting the prosecutor to impeach him with a prior conviction without first approaching the bench in violation of a pretrial motion in limine; and (2) he was denied effective assistance of counsel at trial and on appeal when his attorney failed to object or raise an issue about this error.  After considering the record, the *Anders* brief filed by counsel, and the issues raised by Caldwell, the court of appeals found that the appeal was frivolous and that there was no reversible error.  *See Caldwell v. State*, No. 01-07-00669-CR, 2009 WL 276736 (Tex. App. — Houston [1st Dist.] Feb. 5, 2009).  Caldwell did not appeal further by filing a petition for discretionary review with the Texas Court of Criminal Appeals.

---

[2]     At trial, the indictment apparently contained only one prior felony conviction for possession of a controlled substance on January 16, 2003, in Denton County cause number F-2001-0395-D.  Caldwell also has prior felony convictions from 1991 for possession of cocaine and delivery of cocaine in Harris County cause numbers 593272 and 546650, as well as misdemeanor convictions for resisting arrest and evading arrest.  The state did not attempt enhance the indictment to include Caldwell's other felony convictions because it did not "give notice in time" prior to the trial.  *See Court Reporter's Record*, vol. 5, at 40.

Caldwell challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. His initial application was dismissed for lack of jurisdiction because his direct appeal remained pending. *See Ex parte Caldwell*, No. 58,627-02 (Tex. Crim. App. July 1, 2009).[3] After his appeal became final, Caldwell filed another state habeas corpus application, which raised the following claims: (1) the evidence was factually and legally insufficient to support his conviction for robbery; (2) the prosecution engaged in misconduct by eliciting perjured testimony; (3) the trial court abused its discretion by: (a) commenting on the weight of the evidence when it denied his motion for an instructed verdict; (b) allowing the state to inquire about a prior conviction; and (c) instructing the jury on a lesser-included offense; (4) he was denied his right to an impartial jury when the trial court denied challenges for cause against two biased jurors; and (5) he was denied effective assistance of counsel on appeal when his attorney filed an *Anders* brief. The state responded that most of Caldwell's claims were waived or barred from collateral review and that his ineffective-assistance allegation was without merit. The state habeas corpus court, which also presided over the trial, summarily rejected the application without entering any specific findings or conclusions. The Texas Court of Criminal Appeals denied Caldwell's application without a written order. *See Ex parte Caldwell*, No. 58,627-03 (Tex. Crim. App. Jan. 6, 2010).

---

[3]     Prior to this application, Caldwell filed a state habeas corpus application to challenge one of his other felony convictions for possession of a controlled substance. *See Ex parte Caldwell*, No. 58,627-01 (Tex. Crim. App. May 19, 2004) (involving Denton County cause number F-2001-0395).

Caldwell, who remains in custody of the Texas Department of Criminal Justice -

Correctional Institutions Division (collectively, "TDCJ"), now seeks a writ of habeas corpus

to challenge his robbery conviction under 28 U.S.C. § 2254.  In his pending petition,

Caldwell raises the same claims that he presented on state habeas corpus review.  The

respondent maintains that Caldwell's claims are either not cognizable or without merit,

among other things, and must be dismissed.  The parties' contentions are discussed further

below under the governing federal habeas corpus standard of review.

## II.     STANDARD OF REVIEW

The respondent has filed a motion for summary judgment asking this Court to deny

relief and dismiss the petition.  Motions for summary judgment are typically governed by

Rule 56 of the Federal Rules of Civil Procedure.  In this instance, the respondent's summary-

judgment motion must be determined in compliance with the federal habeas corpus statutes.

*See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d

760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are

governed by provisions of the Antiterrorism and Effective Death Penalty Act (the

"AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S.

320, 336 (1997).

The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to

state court determinations by limiting the scope of collateral review and raising the standard

for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations

omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended

by the AEDPA set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.[4] Claims presenting pure questions of law and mixed questions of law and fact are governed by 28 U.S.C. § 2254(d)(1). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). Under this statute, a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct

---

[4]     Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005).   Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002); *see also Harrington v. Richter*, — S. Ct. —, 2011 WL 148587, at *10 (Jan. 19, 2011) (confirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").  The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).  Thus, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law.  *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Pure questions of fact are governed by 28 U.S.C. § 2254(d)(2).  *See Martin*, 246 F.3d at 475. A state court's findings and conclusions on questions of fact are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts

in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008).   Moreover, a state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).   This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

## III.   DISCUSSION

### A.   Sufficiency of the Evidence

Caldwell argues that he is entitled to relief under 28 U.S.C. § 2254 because the jury's guilty verdict was not based on factually or legally sufficient evidence.   The respondent argues that Caldwell's challenge to the factual sufficiency of the evidence is not cognizable on federal habeas corpus review.   The respondent argues further that Caldwell's challenge to the legal sufficiency of the evidence is procedurally barred and, alternatively, that this claim is without merit.   The respondent's arguments are addressed in turn.

#### 1.   Factual Sufficiency

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).   The Texas factual-sufficiency standard of review is based on state law. *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996).   A federal habeas court does not sit as a super

state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986).   On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.   *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).   Because a challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.

### 2.       Legal Sufficiency — Procedural Default

The respondent notes that Caldwell did not raise a challenge to the sufficiency of the evidence on direct appeal. Instead, he presented the claim in his state habeas corpus application.  The respondent observes that, in Texas, a challenge to the sufficiency of the evidence is not cognizable on collateral review.   *See, e.g., Ex parte Easter*, 615 S.W.2d 719, 721 (Tex. Crim. App. 1981).   The Fifth Circuit has recognized that a petitioner's claim of insufficiency of the evidence is barred by the doctrine of procedural default as the result of his failure to raise such a claim properly on direct appeal.   *See West*, 92 F.3d at 1398, n.18 (recognizing the Texas Court of Criminal Appeals "has long held that the sufficiency of the evidence may only be raised on direct appeal, and may not be raised in state habeas")

(citations omitted).  The procedural default is adequately established even where, as here, the Texas Court of Criminal Appeals denies relief without stating a reason.  *See id*.; *see also Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).  The respondent argues, therefore, that federal review of this claim is barred from habeas corpus review by the doctrine of procedural default.

Caldwell, who has filed a response to the summary judgment motion, does not dispute that a procedural default occurred.  Where a petitioner has procedurally defaulted a claim in state court, habeas corpus review is available only if he can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Because Caldwell does not attempt to show that he is actually innocent, he does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.  *See Dretke v. Haley*, 541 U.S. 386, 393 (2004).  The record does not otherwise disclose cause for the default or actual prejudice.[5]  Absent a showing of cause and actual prejudice, Caldwell's claim is barred by the doctrine of procedural default.

### 3.    Legal Sufficiency — The Claim is Without Merit

---

[5]     The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Even assuming that Caldwell could show cause for the default, he does not establish the requisite actual prejudice because, for reasons outlined above, his challenge to the sufficiency of the evidence is without merit.

The respondent argues, in the alternative, that Caldwell's challenge to the sufficiency of the evidence fails as a matter of law and does not merit relief.  On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).  This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict.  *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995).

According to the indictment, the state alleged that Caldwell, "while in the course of committing theft of property" from a Wal-mart store on November 18, 2006, "and with intent to obtain and maintain control of the property, intentionally and knowingly cause bodily injury to Bonita Shumake, by striking her with his hand."*Ex parte Caldwell*, No. 58,627-03 at 18.  In Texas, a person commits the offense of theft if he "unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen. Code § 31.03(a).  A person commits the offense of robbery if, in the course of committing theft and, with intent to obtain or maintain control of the property, he (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code § 29.02.

12

Caldwell, who testified on his own behalf, admitted committing theft by stealing two flat-screen televisions from the Wal-Mart store.  The theft was captured on surveillance video, which showed Bonita Shumake struggling with Caldwell and attempting to restrain him as he tried to leave the store premises with the televisions.  Bonita Shumake testified that Caldwell struck her during the confrontation, hitting her in the face and neck.  The store maintenance worker (Phil Collins) also testified that he saw Caldwell strike Shumake in the face and head with a closed fist.  Officer Griffith testified that Shumake appeared shaken and injured as a result of her encounter with Caldwell.  This is more than sufficient evidence from which a reasonable jury could conclude that Caldwell committed the offense of robbery.

Caldwell, who denied striking Shumake during the offense, insists that the verdict was not supported by sufficient evidence because there was conflicting testimony about whether he caused her bodily injury.  To the extent that Caldwell asks this Court to re-weigh the evidence and decide if the jury's decision was correct, this type of inquiry is "beyond the scope of review" permitted under the *Jackson v. Virginia* standard.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) (discussing the standard for challenges to the legal sufficiency of the evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979)).  As set forth above, the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  Under this standard, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Caldwell fails to show that the jury's verdict lacked sufficient evidence or that the state court unreasonably applied the *Jackson v. Virginia* standard. Thus, Caldwell is not entitled to relief under the governing federal habeas corpus standard of review.

**B.      Prosecutorial Misconduct**

Caldwell argues that the prosecution engaged in misconduct by "leading" witnesses to commit "perjury." In particular, Caldwell contends that the victim (Bonita Shumake) committed perjury, under questioning by the state, when she testified that Caldwell struck her with his fist. As proof that the testimony was false, Caldwell notes that the store surveillance footage presented at trial documents a struggle, but does not actually show him striking Shumake. Caldwell also takes issue with certain statements by the store manager (Mr. Fontenot) on direct and cross examination. The state habeas corpus court rejected this claim.

The prosecution denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150 (1972); *Napue v. Illinois*, 360 U.S. 264 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). To obtain relief, a petitioner must show that: (1) the testimony was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). Caldwell does not show that false

testimony was presented at his trial and he otherwise fails to demonstrate a due process violation.

In this instance, Caldwell simply disputes the state's evidence showing that Caldwell struck Shumake with his fist during the theft, arguing that this was untrue.  The fact that Caldwell disagrees with Shumake's account of the altercation does not establish that her testimony is false. Likewise, to the extent that Caldwell quarrels with different portions of Mr. Fontenot's testimony, he does not demonstrate that this witness testified falsely. "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).  Rather, contradictory trial testimony merely establishes a credibility question for the jury.  *Koch*, 907 F.2d at 531 (citing *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured)).  Caldwell provides no valid support for his claim of prosecutorial misconduct and the record does not disclose any.  Absent a showing that the testimony at issue was actually false, and that the prosecutor knew it was false, Caldwell has failed to establish a constitutional violation.  Accordingly, he is not entitled to relief on this claim.

### C.    Miscellaneous Rulings by the Trial Court

Caldwell argues that the trial court violated his right to due process, faulting several miscellaneous rulings made during the guilt/innocence phase of the proceeding.  In that respect, Caldwell contends that the trial court committed error as follows, by (1) commenting

on the weight of the evidence when denying his motion for an instructed verdict; (2) allowing the state to inquire about a prior conviction inadmissible for purposes of impeachment; and (3) instructing the jury on the lesser-included offense of theft.  Each of these claims was summarily rejected on state habeas corpus review.  The respondent argues that, to the extent that the claims are cognizable, they do not merit habeas corpus relief.

The respondent correctly notes that each of the trial court rulings at issue are based on Texas law.  As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  An error of state law "does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the due process clause." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990).  To fit within this narrow category, the alleged error must violate "those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which 'define the community's sense of fair play and decency.'" *Id.* at 353 (internal citations and quotations omitted).  Caldwell fails to make that showing here because, for reasons outlined briefly below, he fails to establish error on the trial court's part.

### 1.      Comment on the Weight of the Evidence

Caldwell complains that the trial court committed reversible error, in violation of Texas law, by commenting on the weight of the evidence. In particular, Caldwell contends that the trial court made the following improper comment when it denied his motion for an instructed verdict following the state's case in chief:

> COUNSEL:   Your Honor, at this time the defense would like to make a motion for an instructed verdict that the prosecutor has not proven the case beyond a reasonable doubt.

> COURT:     Well, the prosecutor may not have, but your client sure did. Motion denied.

*Court Reporter's Record*, vol. 4, at 68. Caldwell complains that the comment violates Texas law because the trial court made this comment in front of the jury.

In Texas, it is error for a trial court to make a comment on the weight of the evidence if the comment is "reasonably calculated to benefit the state or prejudice the defendant's rights." *Smith v. State*, 595 S.W.2d 120 (Tex. Crim. App. 1980). In that regard, a trial judge may not discuss or comment on the weight of the evidence when ruling on its admissibility, "nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to *convey to the jury* his opinion of the case." TEX. CODE CRIM. PROC. art. 38.05 (emphasis added). The record confirms, in this instance, that the proceedings had "recessed" and that the jury was not present when the trial court ruled on Caldwell's motion for an instructed verdict. *Court Reporter's Record*, vol. 4, at 68. Because the remark was not conveyed to the jury, Caldwell does not show that the trial court's comment was reasonably calculated to prejudice his defense in violation of Texas law. Likewise, Caldwell does not show that the trial court commented improperly on the weight of the evidence or

that his trial was rendered fundamentally unfair as a result.  It follows that Caldwell is not entitled to habeas relief on this claim.

### 2.      Evidence of an Extraneous Offense

Caldwell complains that the trial court committed reversible error, in violation of the Texas Rules of Evidence, by allowing the prosecutor to question him about a prior felony conviction during the guilt-innocence portion of the proceeding.  Specifically, Caldwell claims that the state was not allowed to inquire on cross-examination about a prior felony conviction for possession of a controlled substance because evidence of this extraneous offense was inadmissible.  Caldwell is mistaken.

Under Rule 609(a) of the Texas Rules of Evidence, evidence that a witness has been convicted of a crime may be admitted for the purpose of attacking the credibility of the witness if the crime was a felony or involved moral turpitude, and the trial court determines that the probative value outweighs its prejudicial effect. The rule imposes a 10-year time limit on the type of prior conviction that can be introduced into evidence, unless the trial court determines that the probative value of the evidence substantially outweighs its prejudicial effect.  *See* TEX. R. EVID. 609(b).  The record does not disclose a violation of Rule 609 in this instance.

Caldwell's trial occurred in 2007.  The record shows that defense counsel elicited testimony from Caldwell, during his direct examination, about a prior felony conviction for possession of a controlled substance that reportedly occurred in 2000.  *See Court Reporter's Record*, vol. 4, at 46.  The exhibits reflect that, although the offense was committed in 2000,

the felony conviction was actually entered against Caldwell in 2003. *See State v. Caldwell*, No. F-2001-0395-D (362nd Dist. Ct., Denton County, Tex.). On cross-examination, the state asked Caldwell to clarify the date of the conviction. *See id.*, vol. 4, at 64. Before asking the question, counsel for both sides approached the bench to discuss which of Caldwell's prior criminal offenses was admissible for purposes of impeachment. *See id.* at 61-62. Caldwell's defense counsel conceded that the above-referenced conviction for possession of a controlled substance in Denton County cause number F-2001-0395-D was admissible.[6] *See id.* at 62. Caldwell does not show otherwise.

Based on this record, Caldwell fails to show that the trial court improperly permitted evidence about a prior felony conviction during his cross-examination. Likewise, Caldwell fails to show that the trial court erred or that his trial was rendered fundamentally unfair as a result. *See Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005) ("A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling violates a specific federal constitutional right or is so egregious such that it renders the petitioner's trial fundamentally unfair."). Accordingly, Caldwell is not entitled to relief on this issue.

### 3.    Jury Instructions

---

[6]    It appears that Caldwell had another prior felony conviction for possession of a controlled substance from 1997. At a hearing outside the jury's presence, defense counsel successfully argued that this conviction was stale and inadmissible under Rule 609. *See Court Reporter's Record*, vol. 4, at 62. Accordingly, evidence concerning this conviction was not admitted during the guilt/innocence phase of the trial.

Caldwell claims that the trial court erred by giving a jury instruction on the lesser-included offense of theft.  In Texas, a criminal offense is considered a lesser-included offense if "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ANN. art. 37.09(1).  A defendant is entitled to an instruction on a lesser-included offense when (1) the proof for the offense charged includes the proof necessary to establish the lesser-included offense and (2) some evidence exists in the record that would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)).

Caldwell does not dispute that, under the facts of his case, theft is a lesser-included offense of robbery.  Nor does he dispute that proof of robbery necessarily includes proof necessary to establish the offense of theft.  *See* TEX. PENAL CODE § 29.02 (defining the offense of robbery to include theft).  Caldwell admitted committing the offense of theft during his testimony at trial, but denied committing the offense of robbery.  *See Court Reporter's Record*, vol. 4, at 47-48, 59-61.  Caldwell did not object to the jury instructions, which included the option to convict on the lesser-included offense of theft.  *See id*. at 69.  During summation, his counsel argued that the evidence established theft, but not robbery. *See id.*, vol. 5, at 23.   Thus, Caldwell's entire defensive strategy was an attempt to limit his liability in terms of potential punishment by persuading the jury find him guilty of theft, at most, but not robbery.

Caldwell does not cite any authority showing that a jury instruction on the lesser-included offense of theft was improperly given under the circumstances present here. Based on this record, he does not show that the trial court erred or that he was denied a fair trial as a result of the jury instructions. Because Caldwell has not established a constitutional violation in connection with the jury instructions, he is not entitled to relief on this issue.

**D.     Right to an Impartial Jury**

Caldwell argues that he is entitled to relief under 28 U.S.C. § 2254 because he was denied his right to an impartial jury. In particular, Caldwell complains that two prospective jurors, Robert Dvorak (Prospective Juror #40) and Connie Buckingham (Prospective Juror #28), expressed impermissible bias during voir dire and should have been disqualified. After the trial court denied Caldwell's challenge for cause, both Buckingham and Dvorak served as jurors at his trial. Caldwell contends, therefore, that the trial court violated his constitutional right to an impartial jury when it denied his challenge for cause. The claim was summarily rejected on state habeas review.

The Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, provides that every defendant has the right to trial by an impartial jury. *See Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *see also Parker v. Gladden*, 385 U.S. 363, 364 (1966) (per curiam); *Irwin v. Dowd*, 366 U.S. 717, 722 (1961). The goal of the Sixth Amendment is "jury impartiality with respect to both contestants: neither the State nor the defendant should be favored." *Holland v. Illinois*, 493 U.S. 474, 483 (1990). The Fifth Circuit has emphasized, "[o]ur criminal justice system rests firmly on the

proposition that before a person's liberty can be deprived, guilt must be found, beyond a reasonable doubt, by an impartial decisionmaker." *Virgil v. Dretke*, 446 F.3d 598, 605 (5th Cir. 2006). To satisfy this mandate of impartiality, a juror must be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.

"The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003) (alteration in original). Caldwell does not complain about implied bias here.[7] In this instance, Caldwell claims that his trial was tainted because prospective jurors Dvorak and Buckingham expressed actual bias during voir dire. Caldwell argues, therefore, that both of these jurors should have been disqualified for cause.[8]

---

[7] Bias is implied as a matter of law only in a "narrow range of cases," such as where a juror's relationship to a party, the case, or some troubling event raises such doubts about his ability to uphold his oath that he will be conclusively presumed biased as a matter of law. *Solis*, 342 F.3d at 395.

[8] To assure an impartial jury, Texas law outlines numerous reasons for which a party ("either the state or defense") may move to disqualify a particular juror "for cause." TEX. CODE CRIM. PROC. art. 35.16(a) (Vernon 2006). Included among those reasons is that the juror has "a bias or prejudice in favor of or against the defendant[.]" *Id.* at art. 35.16(a)(9). Used in this context, "bias" is defined "as an inclination toward one side of an issue rather than to the other," whereas prejudice is defined as "predisposition." *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. 1982). For purposes of this provision, a bias or predisposition in favor of the state is, in effect, a bias against the defendant. *See Smith v. State*, 907 S.W.2d 522, 530 (Tex. Crim. App. 1995).

Texas also affords a challenge for cause for defendants on the grounds that a prospective juror harbors "a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely[.]" TEX. CODE CRIM. PROC. art. 35.16(c)(2). This type of bias, known as "bias against the law," is separate from the type of bias at issue in Article 35.16(a)(9) because it concerns the prospective juror's ability to follow the law as outlined

(continued...)

22

A juror harbors an actual bias, such that he may be excluded for cause,  if his "views would prevent or substantially impair he performance of his duties as a juror in accordance with his instructions and his oath."  *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)).  To demonstrate actual bias, a defendant must point to an "admission" or present "factual proof" of bias on the juror's part. *United States v. Thomas*, 627 F.3d 146, 161 (5th Cir. 2010) (citing *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir.  2001).  On federal habeas corpus review, proof of actual bias requires a showing that the jurors in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Chavez v. Cockrell*, 310 F.3d 805, 811 (5th Cir. 2002). A juror is disqualified, for example, if he unequivocally states during voir dire that he cannot be fair and impartial.  *Virgil*, 446 F.3d at 613.

A federal habeas corpus court must initially presume that a jury was impartial.  *See Smith v. Phillips*, 455 U.S. 209, 218 (1982);  *De La Rosa v. Texas*, 743 F.2d 299, 306 (5th Cir. 1984) (citation omitted).  In determining whether a prospective juror exhibited actual bias during voir dire questioning, the reviewing court must consider the juror's answer in context with the initial question asked as well as with any subsequent modifications. *See*

---

[8](...continued)
> in the court's jury instructions rather than his personal views about the defendant or the state's case. *See, e.g., Anderson*, 633 S.W.2d at 853 (distinguishing the type of bias at issue in Article 35.16(a)(9) as "separate from and in addition to" the type relating to "any applicable law or possible punishment" of the sort at issue in Articles 35.16(b) or 35.16(c)). Thus, for challenges based upon an alleged bias against the law, the relevant inquiry is whether the prospective juror's beliefs would "prevent or substantially impair him from following the law as set out in the trial court's instructions and as required by the juror's oath." *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003) (citing *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997)).

*Virgil*, 446 F.3d at 608.  Caldwell's claims concerning jurors Dvorak and Buckingham are addressed separately below in connection with the pertinent line of questioning.

### 1.     Robert Dvorak (Prospective Juror #40)

Caldwell appears to claim that Robert Dvorak (Prospective Juror #40) was biased against the defense as a matter of law.  During voir dire, defense counsel posed the following question to determine whether any of the prospective jurors believed that a police officer's testimony was more credible than a layperson, thereby indicating a bias against the defense and in favor of the state:

> [COUNSEL]:     How may people feel that when a police officer comes and testifies they have better credibility and they are more believable because, you know, they testify a lot more times . . . They are familiar with the court settings and they know what they are doing, so the officer, just at the outset, even before anybody starts testifying an officer is more credible than a layperson. . . .

*Court Reporter's Record*, vol. 2, at 65.  Dvorak responded that he felt that a police officer was "less likely" to lie than a layperson:

> [JUROR #40]:     I just feel like in that situation the officer has much more to lose in terms of credibility and his possible status in the department if he lies, so.
>
> [COUNSEL]:     So you think that they wouldn't lie.
>
> [JUROR #40]:     I feel like they are less likely to lie, not that they are always absolutely always perfect.  They obviously make mistakes at time, but my bias  would be that probably he is telling the truth.

*Court Reporter's Record*, vol 2, at 74-75. Defense counsel challenged Dvorak for cause, noting that "[h]e said that a police officer wouldn't lie," which indicated that "he would believe the police officer more" than a lay witness.  *Id*. at 94.  The trial court denied

24

Caldwell's challenge for cause.  *See id*.  When Caldwell did not exercise a peremptory challenge against Dvorak, he was empaneled as a juror at Caldwell's trial.  *See Clerk's Record*, at 41-43, 47.

The respondent correctly notes that, by failing to make use of a peremptory challenge against an objectionable juror or comply with Texas procedure, Caldwell waived further review of his claim concerning Dvorak's alleged bias.  In Texas, a challenge for cause based on juror bias "may be waived[.]" TEX. CODE CRIM. PROC. art. 35.16.  "To preserve error for a trial court's denial of a valid challenge for cause, it must be demonstrated on the record that appellant asserted a clear and specific challenge for cause, that he used a peremptory challenge on that juror, that all his peremptory challenges were exhausted, that his request for additional strikes was denied, and that an objectionable juror sat on the jury."  *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996).  Court records show that Caldwell exhausted all of his allotted peremptory challenges.[9]  *Clerk's Record*, at 41-43.  Caldwell could have, but did not, request additional peremptory strikes.  *See Court Reporter's Record*, vol. 2, at 95-96.  Under these circumstances, Caldwell did not preserve error for review in compliance with a well-established state procedural rule.  *See Green*, 934 S.W.2d at 105 (citing *Jones v. State*, 833 S.W.2d 118, 123 (Tex. Crim. App. 1992), *cert. denied*, 507 U.S. 921 (1993)); *see also Harris v. State*, 790 S.W.2d 568, 581-82 (Tex. Crim. App. 1989).

---

[9]     In a non-capital felony case, the State and defendant shall be entitled to ten peremptory challenges.  TEX. CODE CRIM. PROC. art. 35.15(b).

The respondent concedes that there is no published precedent from the Fifth Circuit on whether a waiver of the sort at issue here bars federal habeas review.[10]  The Fifth Circuit has recognized in an unpublished opinion that, where a defendant waives review of a challenge for cause in state court, he commits a procedural default that bars collateral review in federal court.[11]  *See Berkley v. Quarterman*, 301 F. App'x 665, 2009 WL 405858, at *2 (5th Cir. 2009) (finding that, by failing to raise an issue on direct appeal, a capital defendant waived the argument that he was denied right to a trial before a fair and impartial jury when the state trial court refused to strike a venire member for cause); *see also Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993) (observing that a habeas petitioner may waive a constitutional claim of juror bias by failing to present the claim properly under state law thereby committing a procedural default).  Because Caldwell does not claim that his trial attorney was deficient for failing to request additional peremptory strikes, and thereby preserving error for further review, the record does not disclose cause for his failure to

---

[10]    The respondent notes that the Sixth Amendment right to an impartial jury, as with other constitutional rights, can be waived.  *See United States v. Brazelton*, 557 F.3d 750, 755 (7th Cir. 2009); *United States v. Desir*, 273 F.3d 39, 40 (1st Cir. 2001); *United States v. Williams*, 77 F.3d 1098, 1100-01 (8th Cir. 1996);  *United States v. Joshi*, 896 F.2d 1303, 1307 (11th Cir. 1990) (citing *Virgin Islands v. Parrott*, 551 F.2d 553, 554-55 (3d Cir. 1977)); *see also United States v. Chon*, 291 F. App'x 877, 882, 2008 WL 4054403 (10th Cir. 2008); ; *see also Waters v. McGinnis*, 99 F. App'x 318, 2004 WL 1157732 (2d Cir. 2004) ("By deliberately choosing not to challenge this particular juror before the trial court, [the petitioner] has waived the opportunity to challenge the juror's impartiality on habeas review.").  As the Fifth Circuit has recognized, however, such a waiver must be knowingly and voluntarily made by the defendant.  *United States v. Marcello*, 423 F.3d 993, 1004 (5th Cir. 1970).  It is not clear from this record that Caldwell made a voluntary waiver in this instance.

[11]    To hold otherwise, the respondent maintains, would also violate the "doctrine of invited error."  *See United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir. 1991) ("A party generally may not invite error and then complain thereof.") (citations omitted).

comply with state law.[12] *See, e.g., Coleman*, 501 U.S. at 750 (observing that, where a petitioner has defaulted his claim in state court, habeas review is unavailable unless he demonstrates cause and actual prejudice).  Caldwell does not otherwise show that his procedural default is excused.

The respondent argues further that, even if this claim is not barred by Caldwell's procedural default, the record does not reflect that Caldwell was forced to accept a biased juror.  The respondent maintains that the trial court implicitly found that Dvorak was not possessed of a disqualifying bias when it denied Caldwell's challenge for cause.  As the respondent correctly notes, the trial court's finding that Dvorak could be impartial is entitled to significant deference for reasons explained more fully below.

The Supreme Court has held that whether an individual juror is disqualified on account of bias is a question of fact.  *See Patton v. Yount*, 467 U.S. 1025, 1036 (1984) (rejecting the argument that jury bias is a mixed question of law and fact).  "[S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).  "Deference to the trial court is appropriate because it is in a position to assess the demeanor of the venire, and of the individuals who compose it, a factor of critical importance in assessing the attitude and qualifications of potential jurors." *Uttecht v. Brown*, 551 U.S. 1, 9 (2007) (citation omitted).

---

[12]    Neither the state habeas corpus application or the federal habeas petition filed by Caldwell includes an ineffective-assistance claim concerning his trial attorney's performance. Caldwell's failure to include such a claim at the state court level means that such a claim is unexhausted and procedurally barred. *See Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998). It also means that Caldwell cannot now claim that his trial attorney's error constitutes cause for his procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

27

Where federal courts do not afford this deference, they "fail[] to respect the limited role of federal habeas relief in this area prescribed Congress and [the Supreme Court's] cases." *Uttecht*, 551 U.S. at 10.  Therefore, a state trial court's refusal of a petitioner's challenge for cause, which inherently constitutes a finding of impartiality, is entitled to the presumption of correctness found in 28 U.S.C. § 2254(e)(1).  *See Patton*, 467 U.S. at 1038; *Witt*, 469 U.S. at 428; *see also Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir. 1997) (holding that a trial court's finding that a juror was not biased is entitled to a presumption of correctness under both former 28 U.S.C. § 2254(d) and the amended version found in the AEDPA, codified at 28 U.S.C. § 2254(e)(1)).  The Fifth Circuit has recognized that the AEDPA's presumption of correctness is particularly strong where, as in Caldwell's case, the trial court and the state habeas court are one and the same. *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).

The trial court's implicit factual determination that Dvorak could be fair and impartial has support in the record.  As noted above,  Dvorak declined to agree when defense counsel asked him if he thought that police officers would "never" lie.  Dvorak stated only that he believed that an officer might be "less likely to lie" than a layperson.  *Court Reporter's Record*, vol. 2 at 75.  Dvorak further clarified that police officers were "not perfect," and that they "make mistakes sometimes." *Id*.  This is insufficient to show that Dvorak harbored a disqualifying bias.[13]  In that respect, Dvorak's remarks do not reflect a fixed or forthright

---

[13]     In Texas, a prospective juror is not subject to a challenge for cause unless he "states unequivocally that he would always believe a police officer in every case over an ordinary citizen." *Hernandez v. State*, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978).  Dvorak's remarks fall short of the unequivocal statement that he would automatically believe an officer over a lay witness and do not demonstrate that Caldwell's challenge for cause was
(continued...)

expression that he could not be fair and impartial where Caldwell was concerned. *See Virgil*, 446 F.3d at 613.[14]

Because Caldwell has not presented clear and convincing evidence to overcome the trial court's finding that Dvorak could be impartial, this finding is presumed correct. 28 U.S.C. § 2254(e)(1). As such, this Court can grant federal habeas relief only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Caldwell has not met this showing and he does not otherwise demonstrate that the state court's decision to reject his constitutional claim was erroneous. It follows that Caldwell is not entitled to relief with respect to this claim.

### 2.    Connie Buckingham (Prospective Juror #28)

Caldwell also raised an unsuccessful challenge for cause to Connie Buckingham (Prospective Juror #28). Caldwell appears to claim that Buckingham was biased against the law because, although she understood that he was presumed innocent and did not have the

---

[13](...continued)
    improperly overruled. *See id.* at 950.

[14]    In *Virgil*, one prospective juror stated that "his relationship with law-enforcement officers would preclude him from serving as an impartial juror," while another stated that he could not be "fair and impartial" to the defendant, in a case involving an assault on an elderly person, because his mother had been mugged. 446 F.3d at 609-10. The Fifth Circuit held that both jurors were actually biased where they had "unequivocally expressed that they could not sit as fair and impartial jurors." *Virgil*, 446 F.3d at 613.

burden of proof, she would have preferred to hear him testify. During voir dire, defense counsel posed the following question regarding the state's burden of proof and the defendant's right not to testify to determine whether any of the prospective jurors would hold it against Caldwell if he did not take the stand:

> [COUNSEL]:     Okay. One more thing that I wanted to talk to you about is, Ms. Vinson has already talked to you about. It is her burden to prove all the elements.
>
> What that means is Mr. Caldwell and as his attorney, I don't have to do anything. I can just sit back, and I don't have to ask any questions. I don't have to put [on] any witnesses, we don't have to have any demonstrations. We can just sit there and not do anything. If we didn't do anything and what she presents to you did not convince you what she's trying [to] tell you and you have a reasonable doubt in your mind, what would be your verdict?
>
> [JUROR #1]:    Not guilty.
>
> [COUNSEL]:     I'm sorry?
>
> [JUROR #1]:    Not guilty.
>
> [COUNSEL]:     Not guilty, right.
>
> Why, because the defense has no burden of proof. In fact, the defense does not even have to have any witnesses come down here and Mr. Caldwell does not have to testify and that is a right accorded to him by the United States Constitution. He has a right to remain silent and there's a reason for it. Not everybody is trained to come to court, not everybody is comfortable with the situation that they are placed in, not everybody has an education that it takes to be a good witness, a credible witness, a reliable witness. Not everybody has control over their nervous system and, you know, feels relaxed and can be comfortable.
>
> * * * *

> Would that make — what I'm trying to get, the question is, if Mr. Caldwell does not testify, would that make any change in your decision?  Would that — would your thinking about how the case was proven to you change?  Anyone in the first row have an[y] qualms about it, any uncomfortable feeling about it, if Mr. Caldwell doesn't testify?

*Court Reporter's Record*, vol. 2, at 76-77.  After this introduction, defense counsel had the following exchange with Connie Buckingham (Prospective Juror #28):

> [JUROR #28]:     I would prefer that he testify, but, I mean, I would listen to the other side.
>
> [COUNSEL]:     Would you hold it against him if he did not, like you would feel more leaning towards a guilty verdict just the fact that he did not, because you would prefer for him to testify?
>
> [JUROR #28]:     I would just have questions in my mind.
>
> [COUNSEL]:     Okay.  Would you — if you have those kind of questions and the State did not prove the case beyond a reasonable doubt would that make you find him guilty because —
>
> [JUROR #28]:     Yes.

*Court Reporter's Record*, vol. 2, at 80.  After Buckingham interrupted, defense counsel did not finish asking her question and no attempt was made to ascertain what Buckingham's affirmative response was intended to mean.  *See id.*

At the close of voir dire, defense counsel challenged Buckingham and a series of other prospective jurors (#35, #36, #37, and #38) for cause on the ground that they would "require" testimony from the defendant.  *Court Reporter's Record*, vol. 2, at 93.  The trial court denied each challenge, noting that the remarks made during voir dire established, at most, that the jurors would "like to hear" from the defendant, not that they would "require" it.  *Id.*

Caldwell did not exercise a peremptory challenge against Buckingham, and she was empaneled as a juror at his trial. *See Clerk's Record*, at 41-43, 47.

The respondent notes that, as with the claim concerning Dvorak, Caldwell waived this claim by failing to raise a proper objection or preserve error for further review of the challenge for cause. *See Green*, 934 S.W.2d at 105. By failing to preserve error properly in compliance with well established state law, Caldwell committed a procedural default, which precludes habeas review. *See Berkley v. Quarterman*, 301 F. App'x 665, 2009 WL 40585, at *2 (5th Cir. 2009). Caldwell has not established cause for his default and the record does not otherwise show a valid excuse. *See, e.g., Coleman*, 501 U.S. at 750.

Even if not barred, the respondent argues that Caldwell fails to demonstrate that Buckingham was biased under prevailing legal standards. Buckingham stated during voir dire that, although she would "prefer" to hear testimony from the defendant, she would "listen to the evidence from the other side." *Court Reporter's Record*, vol. 2, at 80. Buckingham did not expressly state that she would "require" testimony from Caldwell or that the defendant had any burden to present evidence during his trial. Although Buckingham responded "Yes" to the next partial question proffered by counsel, the record shows that Buckingham's response interrupted a compound statement that was never completed.[15] As

---

[15]   After Buckingham indicated that she would "have questions" in her mind if Caldwell did not testify, defense counsel made the following statement:

> Okay. Would you — if you have those kind of questions and the State did not prove the case beyond a reasonable doubt would that make you find him guilty because —

> (continued...)

a result, it is unclear what counsel was asking and it is also unclear what Buckingham intended.   Neither Caldwell's counsel nor the state asked any follow-up questions or attempted to clarify Buckingham's response.

When viewed in context, Buckingham's comments do not constitute a definite expression of an inability to be fair and impartial.  *See Virgil*, 446 F.3d at 613; *see also Seigfried v. Greer*, 372 F. App'x 536, 540 (5th Cir. 2010) (unpublished) ("Although the statements made by Juror 2 hinted at possible bias against Seigfried, Juror 2 never explicitly stated that she could not be an impartial juror. In contrast to the statements by Juror 2 during voir dire, both this court and others courts have found actual bias where a juror forthrightly states that she could not be fair and impartial.").  To the extent that there was any lack of clarity in the record of Buckingham's voir dire testimony, the Supreme Court has concluded that ambiguous statements "are insufficient to overcome the presumption of correctness owed to the trial court's findings." *Patton*, 467 U.S. at 1040.  Indeed, as the Supreme Court has emphasized, "this is why deference must be paid to the trial judge who sees and hears the juror." *Witt*, 469 U.S. at 426.

A review of entire voir dire proceeding reinforces the trial court's implicit determination that Buckingham could follow the law and was not biased.  The record shows that, during the state's voir dire, Buckingham agreed, along with the rest of the panel, that the state had the burden of proof and that Caldwell was presumed innocent.  *See Court*

---

[15](...continued)
  *Court Reporter's Record*, vol. 2, at 80.  Before counsel could complete her question, Buckingham interrupted to say "Yes." *Id.*

*Reporter's Record*, vol. 2, at 44-45.  Buckingham also indicated an understanding of the reasonable-doubt standard, acknowledging that a "not guilty" verdict was required where there was lingering doubt.  *See id*. at 62-64.  The record reflects that Buckingham, along with the other jurors who served at Caldwell's trial, swore under oath to render a "true verdict . . . according to the law and the evidence."  *Id.* at 96.  Buckingham did not make any other comments that indicated she could not be fair or impartial.

Based on this record, this Court concludes that the trial court's implicit finding of impartiality was reasonable because Buckingham's responses as a whole did not reflect a fixed opinion about Caldwell's guilt or an unequivocal statement that she could not serve as a fair and impartial juror.  *See Chavez*, 310 F.3d at 811; *see also Virgil*, 446 F.3d at 613.  Because the record does not disclose evidence of actual bias on this juror's part, the state court's decision is entitled to deference on federal habeas corpus review and is presumed correct.  *See* 28 U.S.C. § 2254(e)(1)*; Witt*, 469 U.S. at 428; *see also Uttecht*, 551 U.S. at 9-10.  Absent proof of actual bias on Buckingham's part, Caldwell further fails to show that the state court's decision to deny relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Accordingly, Caldwell is not entitled to habeas corpus relief on this issue.

### E.   Ineffective Assistance of Counsel — Appeal

Caldwell contends that he is entitled to relief because he was denied his constitutional right to effective assistance of counsel on appeal.  In particular, Caldwell complains that his

appellate attorney was deficient for filing an *Anders* brief. The respondent notes that this allegation was rejected on state habeas corpus review.

The Fourteenth Amendment to the United States Constitution guarantees a criminal appellant the right to counsel in his first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387 (1985); *Douglas v. California*, 372 U.S. 353 (1963). The right to counsel, where present, also entails "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). "'Persons convicted of a crime are entitled to receive effective assistance of counsel in their first appeal of right,' but counsel is not required to raise every nonfrivolous issue." *Givens v. Cockrell*, 265 F.3d 306, 310 (5th Cir. 2001) (quotation omitted). The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Smith v. Robbins*, 528 U.S. 259, 278 (2000).

A habeas corpus petitioner who claims that he was denied the right to effective assistance of counsel on appeal must satisfy the above-referenced *Strickland* standard by showing that his counsel's performance was deficient, and that counsel's deficient performance resulted in actual prejudice. *See Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006). Because there is no right to appellate counsel in the absence of a nonfrivolous issue for appeal, a petitioner challenging the effectiveness of his appellate attorney must demonstrate deficient performance by showing that his counsel "was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them." *Robbins*, 528 U.S. at 285. If the

petitioner succeeds in such a showing, then he must establish actual prejudice by demonstrating a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal." *Id.*

In this case, Caldwell fails to show that he was denied effective assistance of counsel because he does not identify a non-frivolous issue for appeal.  In that regard, Caldwell alleges that his appellate attorney was deficient for filing an *Anders* brief because he did not raise the issues that he presented on state and federal habeas review.  For reasons set forth above, Caldwell has not shown that error was properly preserved for appeal with respect to his claim of juror bias.  None of his other claims have merit.  Therefore, Caldwell cannot demonstrate that, but for his appellate attorney's deficient performance, he would have prevailed in that proceeding.

Absent a showing that his appellate attorney was deficient or that he was actually prejudiced as a result, Caldwell fails to demonstrate that he was denied effective assistance of counsel on appeal.  Under these circumstances, Caldwell fails to show that the state court's decision to reject his ineffective-assistance claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See* 28 U.S.C. § 2254(d)(1).  Therefore, Caldwell is not entitled to relief on this issue.

Caldwell has failed to establish that any of his claims merit relief.  Accordingly, the respondent is entitled to summary judgment as a matter of law and the petition must be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.    The respondent's motion for summary judgment [Doc. # 12] is **GRANTED**.

2.    The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED** with prejudice.

3.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>January 31</u>, 2011.

Nancy F. Atlas
United States District Judge